IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL NAHLIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 15-cv-1417-JPG-CJP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Carl Nahlik seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for DIB in July 2012, alleging disability beginning on February 21, 2011. After holding an evidentiary hearing, ALJ Stephen M. Hanekamp denied the application in a written decision dated September 22, 2014. (Tr. 16-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issue Raised by Plaintiff

Plaintiff raises the following issue:

1. The ALJ and the VE used incorrect definitions of "standing" and "walking" in determining whether plaintiff could do other jobs at step 5.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

In order to receive DIB, plaintiff must establish that he was disabled as of his date last insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).  *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether Mr. Nahlik was, in fact, disabled at the relevant time, but whether the

3

ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Hanekamp followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB only through June 30, 2012. The ALJ found that plaintiff had severe impairments of history of a fracture to the L5 disc space in December 1996, status-post gunshot wounds to the left chest and arm, and an umbilical hernia. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level with a number of physical limitations. As is relevant here, the ALJ determined that plaintiff was limited to standing for 30 minutes at a time and for a total of 2 hours during the workday, and to walking for 30 minutes at a time and for a total of 3 hours during the

workday.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past relevant work.  However, the ALJ also found that he was not disabled because he was able to do other jobs that exist in significant numbers in the economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period.  In view of plaintiff's arguments, the Court will omit an extended discussion of the medical evidence.

    **1.**    **Agency Forms**

Plaintiff was born in 1970 and was almost 41 years old on the alleged onset date of February 21, 2011.  (Tr. 245).

Plaintiff stated in a Disability Report that he was unable to work because of a back injury, an abdominal injury, left knee degenerative joint disease, and limited grip in his right hand.  (Tr. 248).  He had worked in the past as a heating and air conditioning laborer, swimming pool installer, department store stocker, and truck driver.  (Tr. 249).

    **2.**    **Evidentiary Hearing**

Two evidentiary hearings were held.  The ALJ explained in his written decision that, after the first hearing, he received a report from a consultative physical examination which changed his assessment of plaintiff's RFC.  Therefore, a second hearing was held.  The ALJ's decision was based on the testimony of the VE at the second hearing.  See, Tr. 16, footnote 1.

The second hearing was held in August 2014. Mr. Nahlik was represented by an attorney. (Tr. 33). Vocational Expert James Israel testified. A different VE had testified at the first hearing, and Mr. Israel had no prior contact with Mr. Nahlik. (Tr. 42).

The ALJ asked the VE a hypothetical question which corresponded to the ultimate RFC findings. As is relevant to plaintiff's only argument, the hypothetical question limited him to doing light work, standing for 30 minutes at a time and for a total of 2 hours during the workday, and to walking for 30 minutes at a time and for a total of 3 hours during the workday. He was also limited to sitting for 30 minutes at a time and for a total of 3 hours during the workday. (Tr. 44-45). The VE testified that this person would not be able to do any of plaintiff's past work. (Tr. 45). However, he would be able to do other jobs such as cashier, packer, assembler and sorter. (Tr. 45-46).

On cross examination, plaintiff's counsel asked the VE whether the jobs he identified would allow the person to leave the workstation at will. The VE said they would not. Plaintiff's counsel then asked whether those jobs would allow for three hours of walking.[1] (Tr. 50). The following exchange between the VE and counsel then occurred:

> A: Well, it depends on how one defines it but if one talks about standing as being in a fairly stationary position and walking as any forward motion where the legs are involved the answer would be yes. If one defines walking as covering a larger territory then it would be a much reduced number from that. And so that – it really depends on how narrowly one defines walking, essentially.
>
> Q: Okay. You just confused me, I'm sorry. As far as – so, in other words, if [sic] three hours of walking in an eight hour period would be allowed for those jobs?
>
> A: Three hours of walking if you define walking as being on your feet and moving in a direction that could even be in a very small confine. For example, I could

---

[1] The transcript says "free hours of walking." In context, it is clear that plaintiff's counsel said "three hours of walking."

6

>demonstrate it but if a packer or wrapper is up on his feet and he's moving around to put other parts together, back and forth, even in a small area that would count as some of that walking time that the clock would tick on that walking time.
>
>Q:   Okay.
>
>A:   It's – so that is the definition that I used.   Now, if walking is used in a situation where you're walking a straight line that's a different story.   Then you're away from the work station these jobs would not be included under that scenario.   I did not adopt that definition of walking.
>
>Q:   Okay.   Does the DOT [*Dictionary of Occupational Titles*] define walking?
>
>A:   The DOT does define walking in terms of forward motion of the legs and so forth.   I don't believe it has a parameter on distance per se.   I'd have to revisit that.

(Tr. 50-51).

Plaintiff's counsel asked no further questions of the VE.

The ALJ then had the following exchange with the VE:

>Q:   All right, if the person would then be walking away from a fixed workstation working but walking away from a stationary work station three hours a day to do other work, I suppose, then what results?
>
>A:   Completely no job whatsoever.   That would change everything.   That would be a walking where they are not functional work as opposed to standing.   The relevant immediate area, basically ambulating almost as much for balance as anything else, no jobs under that hypothetical.   Last hypothetical I should say.

(Tr. 52).

## Analysis

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform his past work, the Commissioner bears the burden of showing that he is capable of performing other work that exists in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the *Dictionary of Occupational Titles* for information about the typical characteristics of jobs as they exist in the economy. An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. §404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

Plaintiff does not argue that the ALJ erred in assessing his RFC. Thus, he necessarily accepts the ALJ's determination that, as of his date last insured, he was able to do light work with the assessed limitations, including the limitations to standing for 30 minutes at a time and for a total of 2 hours during the workday, and to walking for 30 minutes at a time and for a total of 3 hours during the workday. His only argument is that the ALJ and the VE used incorrect definitions of standing and walking.

An ALJ has an affirmative duty to ask the VE whether his testimony conflicts with information contained in the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). ALJ Hanekamp did so here - twice - and the VE replied that it did not. (Tr. 48, 49). Plaintiff's counsel asked the VE about the DOT definitions of standing and walking, but did not alert the ALJ that he thought that the VE's answer was incorrect or that he thought that the VE was using definitions that conflicted with the DOT definitions. Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent*

8

conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)(7th Cir. 2006)[emphasis in original].[2]

Plaintiff does not argue here that there were obvious conflicts between the VE's testimony and the DOT. In fact, he has failed to establish any conflict at all, much less an apparent one.

The DOT defines standing as "Remaining on one's feet in an upright position at a work station without moving about." The DOT defines walking as "Moving about on foot." *Dictionary of Occupational Titles*, Appendix C – Components of the Definition Trailer, 1991 WL 688702. Plaintiff recognizes that these are, in fact, the DOT definitions of the terms. See, Doc. 13, p. 6.

Plaintiff's argument is unclear. He seems to be arguing that, because the VE testified that there would be no jobs that would accommodate "walking away from a stationary work station three hours a day," that the VE's testimony establishes that he is disabled. See, Doc. 13, p. 6.

Plaintiff's argument is based on a misreading of the RFC assessment and of the VE's testimony.

The RFC assessment does not require plaintiff to walk away from a work station for three hours a day. The RFC assessment and the corresponding hypothetical limit him to walking for 30 minutes at a time and for a total of 3 hours a day. The ALJ explicitly stated that he rejected the suggestion that plaintiff "needed to leave his work station at will or for more than 3 hours a day." Again, plaintiff does not argue here that the RFC assessment was erroneous.

Plaintiff points out that the DOT definition of standing includes the language "at a work station," while the definition of walking does not. It is difficult to appreciate the significance of

---

[2] Plaintiff's brief does not cite *Prochaska* or *Overman*.

9

this point. The DOT defines walking as "moving about on foot." There is no conceivable reason why the DOT would define walking in relation to proximity to a work station. The VE's testimony made the obvious and common sense point that walking includes "being on your feet and moving in a direction that could even be in a very small confine" and does not necessarily mean walking in a straight line away from a work station. (Tr. 51). That is the definition that he applied in responding to the hypothetical question which assumed the limitations contained in the RFC assessment.

In short, plaintiff has not demonstrated that the VE's definitions of standing and walking conflict with the DOT definitions of those terms. He has not advanced any other argument for reversal of the Commissioner's denial of his application.

## Conclusion

After careful consideration of plaintiff's arguments, the Court is convinced that ALJ Hanekamp committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Carl Nahlik's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:** 1/11/2017

                                                      *s/J. Phil Gilbert*
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**